[Civ. No. 4055.   First Appellate District, Division One.—November 25, 1921.]

## EMMA ELDRED MAE SHOUDY, Appellant, v. JULIA SHOUDY, Respondent.

[1] DIVORCE—POLICIES OF INSURANCE ON LIFE OF HUSBAND—EFFECT OF DECREE—·CONSTRUCTION OF PROPERTY SETTLEMENT AGREEMENT—RIGHTS OF WIFE.—A judgment in an action for divorce reciting that an award of alimony and direction for the payment of certain sums is in full payment for alimony, maintenance, and support of the minor child of the parties and in full settlement of their property rights, but also providing that the defendant shall assume and pay all claims and demands arising by reason of the community heretofore existing or by reason of any contract or note to which the husband may be a party, did not determine the interest of the wife in respect to policies of insurance on the life of the husband, which the husband agreed in their property settlement agreement to keep in force for her benefit, so as to bar the maintenance of an action by her to establish her rights in such policies after his death.

[2] LIFE INSURANCE—POLICIES ON LIFE OF HUSBAND—AGREEMENT WITH WIFE—ACQUISITION OF VESTED INTEREST.—Where a husband pending an action for divorce entered into an agreement with his wife, who was up to the time of the execution of such agreement a mere voluntary beneficiary in his life insurance policies, to keep the policies in effect for her as long as she remained single, her interest as a beneficiary in such policies became changed from that of a mere expectancy to a more fixed and permanent relation and she had thenceforth an equitable interest in such policies, of which she could not be divested by the mere act of the insured in changing the name of the beneficiary.

[3] ID.—CHANGE OF BENEFICIARY—SECOND WIFE OF INSURED—LOAN OF MONEY—ASSURANCE OF PROTECTION BY POLICIES—RELATIVE EQUITIES.—The interest thus acquired in such policies is superior to the interest therein of the second wife of the insured, who was substituted as beneficiary, notwithstanding that she loaned money to the insured and ceased to press him for its repayment

2.  Vested interest of beneficiary in ordinary policy, notes, 1 Ann. Cas. 684; 7 Ann. Cas. 1026; 11 Ann. Cas. 49; Ann. Cas. 1912B, 1144.

Divorce as affecting rights of beneficiary in insurance, notes, 2 Ann. Cas. 351; 7 Ann. Cas. 1026; Ann. Cas. 1913D, 685; Ann. Cas. 1915C, 321; Ann. Cas. 1917C, 269.

upon his assurance that he had protected her by the policies, but who took no steps to ascertain how she was protected and was without knowledge that she had been made beneficiary until after her husband's death.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. George H. Cabaniss, Judge. Reversed.

The facts are stated in the opinion of the court.

J. R. Gilbert and E. B. Mering for Appellant.

Andrew F. Burke and John R. Tyrrell for Respondent.

RICHARDS, J.—This is an appeal from a judgment in the defendant's favor. As to the facts of the case there is no material dispute: The plaintiff and appellant Emma Eldred Shoudy intermarried with one Dexter Shoudy on March 1, 1906. There was issue of this marriage one child, Kenneth Shoudy, born October 10, 1907. The parties to said marriage were divorced on April 10, 1916. On February 6, 1919, Dexter Shoudy married Julia Cochran, the defendant and respondent herein. On the twenty-second day of September, 1908, Dexter Shoudy had caused two life insurance policies, each for $2,000, to be issued by the Illinois Bankers Life Association upon his life, with his then wife, Emma Shoudy, as the beneficiary named therein. On the twenty-ninth day of March, 1916, while a divorce action instituted by his said wife against Dexter Shoudy was pending and about to be brought to trial, the latter wrote a letter to his sister, Mrs. Laura Armstrong—who, it seems, had interested herself in bringing about a property settlement between the parties—which letter, as far as is material, reads as follows:

"Dear Sister:

"Referring to our conversation settlement between Mrs. Shoudy and myself you are at liberty to say to her as follows:

"First. She can have the divorce.

"She can have the custody of the child.

"Second. She will have an alimony as long as Ruth is with her of $125.00 per month. . . . If at any time during

this year I am able to pay her in cash $3,500, I am to be released from paying alimony entirely.

"Third. . . . As soon as the divorce is granted I will give her $250.00. I will give her $250.00 on June 1st, 1916 . . . $500.00 on September 1st, 1916. . . .

"Fourth. . . . dishes . . .

"Fifth. . . . for Ruth . . . a piano.

"Sixth. In consideration of this, and when payments have been met, i. e., $250.00, $250.00, $500.00 and the furniture purchased, I want it understood and considered that I am released and have settled in full for everything of every kind and nature whatever.

"Seventh. Insurance: I have a policy in the Bankers Life Association, $4,000.00, which I will keep in effect for her as long as she remains single, and also for Ruth until she marries—$3,000 for Mrs. Shoudy and $1,000.00 for Ruth. I feel that I will be able to carry this out. . . .

"If this letter is acceptable to her, have her so instruct her attorney, Mr. Wilman Tucker, and we will close the matter up as speedily as possible.

"All this, if you like, can be incorporated in the decree if the Judge will so permit."

Upon the same day on which this letter was written Dexter Shoudy and his then wife, the plaintiff herein, entered into the following written agreement respecting a settlement of their property rights and interests, namely:

"Memorandum of agreement made and entered into this 29th day of March, 1916, by and between Dexter Shoudy, the party of the first part, and Emma May Shoudy, the party of the second part,

"Witnesseth: That whereas the parties hereto are now husband and wife, and

"Whereas, there is now an action pending for divorce . . . and

"Whereas, the parties hereto have arrived at an adjustment of their business affairs, which is evidenced by a letter dated March 29, 1916, addressed to Mrs. Laura Armstrong which is hereto attached marked Exhibit A, and which the parties hereto hereby confirm and adopt.

"In witness whereof the parties hereto have hereunto set their hands and seals the day and year first above written."

On April 10, 1916, an interlocutory judgment was made and entered in said divorce action granting the plaintiff therein a divorce and awarding to her the custody of said minor child which, in so far as the same refers to alimony or to any division or settlement of the property rights and interests of the parties, reads as follows:

"That the plaintiff be and she is hereby awarded alimony as follows: $250.00 to be paid upon the entry of this decree; $250.00 to be paid on June 1st, 1916; $500.00 to be paid on September 1, 1916, and in addition thereto that the defendant pay to the plaintiff the sum of $125.00 per month, the first of said payments to commence on the 1st day of April, 1916, and the said sum to be paid on the first of each and every succeeding month until such time as the plaintiff may remarry, at which time said alimony shall cease. That in the event the daughter of the plaintiff, Ruth Genevieve Osborne, should marry or cease to reside with plaintiff then and in that event the said alimony shall be reduced to the sum of $100.00 per month. The foregoing in full payment of and for alimony, maintenance and support of minor child made or to be made, and in full settlement of their property rights.

"That in the event the defendant shall pay to the plaintiff within one year following the entry of this decree the sum of $3,500.00 then and in that event the said alimony shall cease.

"Said defendant shall hereby assume and pay all claims and demands arising and to arise by reason of the community heretofore existing or by reason of any contract or note to which said defendant may be a party."

The letter which he had sent to the insurance company was dated April 19, 1916. It inclosed and referred to the original policies which had been issued to him, and then proceeded to say:

"This is to advise that we have just been divorced a few days ago, and I agreed to keep these in force for her until she may remarry. Therefore, I think there is another indorsement needed. I wish you would kindly fix them up as they should be and return them to me. She will go by the name of Mrs. Emma Mae Shoudy, and of course is a widow. I desire her to receive the money in case of my death."

The letter in reply from the insurance company, a copy of which he sent to his former wife and also to his said sister, returned the policies to him with the statement that—

"In reply will say that these policies do not need any change as the face of the policy provides, should they become a claim, would be paid to Emma Eldred Shoudy, and the wife part of it would not cut any figure. This is simply placed in the policy at the time of issue to show that there was a relationship when the policy was issued. Unless there is a legal change in the changing of the beneficiary altogether, at your request, the face of the policy would be paid to Emma Eldred Shoudy as stated in the policy."

To this letter Dexter Shoudy sent the following reply:

"I am in receipt of yours of the 25th and note that with reference to policies 9452 and 9453 for $2,000.00 each, it makes no difference about the divorce.

"You say the policies will be paid to Emma Eldred Shoudy just the same in case of my death.

"My address for assessment notices is 421 Railway Exchange Building, Seattle, Washington."

Copies of all of these letters were sent, as we have seen, to the plaintiff herein. The policies themselves, both before and after the divorce between the parties, appear to have been kept in a vault to which Dexter Shoudy and his former wife had each a key.

Notwithstanding these various letters and agreements, Dexter Shoudy on April 21, 1916, undertook to change the name of the beneficiary in his said two policies from "Emma Eldred Shoudy, wife," to "Mrs. Laura Armstrong, sister." On October 15, 1917, he again undertook to change the name of such beneficiary from "Mrs. Laura Armstrong, sister," to "Julia Cochran, fiancee"; and still again on April 21, 1919, he undertook to change said beneficiary from "Julia Cochran, fiancee," to "Julia Shoudy, wife," to whom he had been married on February 5, 1919.

The record herein further discloses without substantial conflict the following facts: In the month of April, 1916, after Dexter Shoudy had been divorced from the plaintiff herein, Julia Cochran, the defendant herein, delivered to him the sum of $5,000. There seems to have been no note evidencing this transaction nor any postponed time of repayment, but Dexter Shoudy credited that amount to Julia

Cochran about that date in his books of account, stating therein that it was cash for investment, and also later on entered items showing payments on account of said transaction to the amount of several hundred dollars. In her testimony herein Julia Cochran states that the transaction was in the nature of a loan, and she further testifies that during the year 1918 and prior to her marriage to Dexter Shoudy she began pressing him for the payment of this loan, whereupon, as she testifies and as the trial court found, he said to her, "I have protected you. I have life insurance in the Illinois Bankers for $4,000, and I am protecting you. If anything happens to me, why, you will have my insurance for the money I owe you." She further testifies that upon this statement she ceased pressing him further for the repayment of the money. The fact was that Dexter Shoudy had in the year 1917, a year or so after receiving said money and some time before the defendant began to press him for its repayment, changed the name of the beneficiary in said policies on the face thereof to "Julie Cochran, fiancee." It does not appear that Julia Cochran ever saw or had possession of these policies or ever knew that any change had been made in the name of the beneficiary therein until after Dexter Shoudy's death, which occurred on October 28, 1919. Thereafter the plaintiff herein demanded of said defendant that she turn over to her the said policies, which demand being refused the plaintiff commenced this action to recover said policies or the proceeds thereof.

Upon the trial of the cause the court found in the defendant's favor, holding that Dexter Shoudy had made no binding contract with the plaintiff which would have the effect of taking away the right reserved in said policies to change the beneficiary thereof at any time, and that by the change to "Julia Cochran" under the circumstances above set forth she became invested with the right to the same and the proceeds thereof at the time of Dexter Shoudy's death. The court further found that the plaintiff was estopped to claim or assert any right to be or remain the beneficiary of said policies, and that the judgment of divorce between herself and said Dexter Shoudy was a bar to the making of said claim. Judgment was entered accordingly

in the defendant's favor and from such judgment the plaintiff prosecutes this appeal.

[1] The first question which presents itself upon this appeal is that arising upon the respondent's contention that the judgment of divorce between Dexter Shoudy and the plaintiff herein constituted a determination of the rights of the plaintiff in respect of these policies and is a bar to the maintenance by her of the present action.

We find ourselves unable to agree with this contention as to the effect of said judgment. It is true that in said judgment the trial court, after making the award of alimony and directing the payment of certain sums of money according to the terms of the prior agreement between the parties, does say: "The foregoing in full payment for alimony, maintenance and support of the minor child made or to be made and in full settlement of their property rights." But the said decree also contains another clause evidently inserted in the decree with the agreement of the parties in the peculiar form and order in which the same is phrased before the court, which reads as follows: "Said defendant shall hereby assume and pay all claims and demands arising and to arise by reason of the community heretofore existing or by reason of any contract or note to which said defendant may be a party." There is no reference in the record to any other outstanding contract to which said Dexter Shoudy was at said time a party than the written agreement predicated upon the letter or note to his sister, Mrs. Armstrong, and which were apparently before the court at the time it made and entered said judgment. Moreover, the parties to said divorce action did not at any time so interpret said judgment, but, on the contrary, evidently regarded the agreement between them as to the status of the rights of the plaintiff in regard to said policies as still in force and effect, since Dexter Shoudy immediately after the entry of said judgment took steps to have the said status and rights of the plaintiff therein and herein fixed and determined upon the face of said insurance policies, and at the time, supposing that he had done so, duly notified said plaintiff thereof. We therefore conclude that the said judgment of divorce did not determine the rights and interests of the plaintiff in respect to said insurance policies adversely to whatever fixed and vested rights or equities she had ac-

quired therein by virtue of said agreement, and that the said judgment is not a bar to her present action.

[2]  The next contention which arises upon the face of this record is as to the right or interest that the plaintiff herein acquired in these two policies and in the proceeds thereof by virtue of her contract with Dexter Shoudy.

The Bankers' Life Association is, as the record shows, a mutual benefit association, the members of which are, by the terms of its policies, permitted to change the beneficiaries named therein by obtaining the written consent of the insurer so to do. Up to the time when Dexter Shoudy and the plaintiff entered into their said agreement the plaintiff was a mere voluntary beneficiary therein, having an expectancy but no vested or equitable rights or interests therein which the insured could not have terminated at will by changing the beneficiary named therein; but when Dexter Shoudy, in anticipation of the divorce between himself and his wife, offered as one of the terms of settlement of their property rights "to keep in effect for her as long as she remained single" said policies, and when· this offer was accepted by her the quality of her interest as a beneficiary in said policies became changed from that of a mere expectancy to a more fixed and permanent relation. She had thenceforth an equitable interest in said policies of which she could not be divested by the mere act of the insured in changing the name of the beneficiary. In the case of *Jory* v. *Supreme Council, etc.*, 105 Cal. 20 [45 Am. St. Rep. 17, 26 L. R. A. 733, 38 Pac. 524], this interest or equity is thus described: "The principle here under consideration is the most recent growth of mutual benefit association law which in itself is young in years; and we know of nothing in the law which deprives a person contemplating membership in a mutual benefit association from so contracting with the proposed beneficiary as that when such certificate is issued, equities in favor of the beneficiary are born of such merit that the insured member has no power to defeat them. The few authorities shedding light upon this question declare the rights of the beneficiary are such as to create a vested interest in the proceeds of the certificate. (*Smith* v. *National Ben. Soc.*, 123 N. Y. 85 [9 L. R. A. 616, 25 N. E. 197]; *Maynard* v. *Vanderwerker*, 24 N. Y. Supp. 932.) Possibly this is not a correct declaration of the prin-

ciple of law applicable to the conditions; for a second bene-
ficiary might be substituted, wholly innocent of the con-
tractual relations existing between the insured and the first
beneficiary, and his substitution give rise to the creation of
equities in his behalf, all controlling upon a judicial dis-
position of the rights of the parties concerned. If the
original beneficiary's interest was vested no subsequent con-
ditions could possibly arise which would defeat his right, and
for this reason we think it can hardly be termed a vested
interest. The whole matter seems to be rather a question of
equities, and the stronger and better equity must prevail.''

In this view of the instant case it would seem to follow
that the equitable right which the plaintiff herein acquired
by virtue of her agreement with Dexter Shoudy was one
of which she could not be deprived by any act of the in-
sured in the way of an attempted substitution of the name
of a merely voluntary beneficiary in the place and stead
of her name in said policies; and that in so far as Mrs.
Laura Armstrong or Julia Cochran or Julia Shoudy were
such voluntary beneficiaries, neither they nor either of them
could have gained any right or interest in said policies
which would be superior to that of the plaintiff herein.

[3] The respondent, however, contends that the defend-
ant herein, Julia Shoudy, upon the facts of this case as
testified to by her and as found by the court to be true,
became by virtue of the change in the name of the benefi-
ciary in said policies to her own name something more than
a mere voluntary beneficiary therein; and that upon said
facts it must be held that she acquired an equitable interest
therein which was superior to the equitable interest of the
plaintiff therein, and hence that for that reason the judg-
ment must be affirmed.

The facts upon which the defendant herein relied in the
trial court successfully to sustain this claim are undisputed
and are these: On April 23, 1916, Dexter Shoudy credited
Julia Cochran on his books with $4,000, charging himself
with the same under the item ''Gave me cash to invest.''
On April 27, 1916, he credited the account of Julia Cochran
with the sum of $1,000, debiting himself with that sum
under the item ''Cash.'' Julia Cochran, testifying regard-
ing these matters, states that the $5,000 was a loan. There
was no security then given or any note or other memoran-

dum than said book entries evidencing the transaction. On October 15, 1917, Dexter Shoudy changed the name of the beneficiary upon the face of said policies to "Julia Cochran, fiancee." This was done apparently of his own motion without either agreement, demand, or knowledge on the defendant's part. At some time during the year 1918 she began pressing Dexter Shoudy for the repayment of this money, and he then said to her, "I have protected you. I have life insurance in the Illinois Bankers' for $4,000.00, and I am protecting you. If anything happens to me, why, you will have my insurance for the money I owe you." She further testifies that upon hearing this she ceased to press him further for the payment of the money. Dexter Shoudy married Julia Cochran on February 6, 1919. Thereafter and also without her knowledge or agreement he caused the name of the beneficiary on the face of said policies to be changed from "Julia Cochran, fiancee," to "Julia Shoudy, wife." The defendant never saw these policies nor knew anything about the changes in name of the beneficiary in said policies until after Dexter Shoudy's death.

We are of the opinion that these facts fall far short of being sufficient to create equities in the defendant herein superior to those already created by Dexter Shoudy in favor of his former wife. His act in changing the name of the latter as the beneficiary of said policies was at the time such change was made a wrongful act on his part in express violation of what we have found to be the agreement with the plaintiff. It was also an entirely voluntary act on his part for which there was no consideration moving from anyone and regarding which there was neither agreement, compulsion, or knowledge on the part of this defendant. The mere fact that he owed the defendant some money at that time would not suffice to render her other than a mere voluntary beneficiary created by himself and changeable at his will. The defendant herein upon such a state of facts could not have asserted any equities in said policy against Dexter Shoudy himself had he undertaken to again change the beneficiary in said policies; and she certainly cannot be heard to assert equities against the prior rights of this plaintiff which she could not have asserted against Dexter Shoudy himself.

Nor do we think that the subsequent conversation between Dexter Shoudy and this defendant strengthens the position of the defendant in this regard, since it amounted to nothing more than the vague, general statement that he had protected her and that she should have his insurance upon his death. No details were given or asked as to how the defendant had been protected, nor was any agreement made or further understanding had between the parties. The defendant merely states that upon being given this vague assurance of protection she ceased to press him further for the money. We are cited to no authorities and are satisfied that there are none which would serve to uphold the claim of an equitable assignment of an insurance policy as between a debtor and his creditor based upon the oral generalities of such a conversation as this. If the defendant understood from this conversation that she was thereby being invested with equitable rights in these policies which Dexter Shoudy could not thereafter take away, and with superior equities therein to those which might exist in favor of former beneficiaries, she should certainly have taken some steps to inform herself as to the facts out of which they arose. She did not do this; she made no effort to inform herself further, and remained in ignorance of the fact that she had ever been made the beneficiary of these policies until after Dexter Shoudy's death. Out of such an inchoate condition and in the absence of any definite agreement or understanding between Dexter Shoudy and this defendant amounting in effect to an equitable assignment of these policies to her, we cannot conceive how equities could have arisen in her favor which can be made superior to the definite equities which the plaintiff acquired by virtue of her agreement with Dexter Shoudy at the time of her divorce from him. We are, therefore, of the opinion that the trial court was in error in its finding and conclusion that the equities of the defendant were superior to those of the plaintiff herein, and in rendering judgment in the defendant's favor predicated upon such erroneous finding of fact.

Judgment reversed.

Kerrigan, J., and Waste, P. J., concurred.