KEEFE et al. v. BRODERICK, Collector of Internal Revenue.

No. 3012.

District Court, D. Rhode Island.

Jan. 16, 1939.

958

Andrew P. Quinn and Richard F. Canning, both of Providence, R. I., for plaintiffs.

J. Howard McGrath, U. S. Atty., of Providence, R. I., and Jerome P. Carr, Sp. Asst. to Atty. Gen., for defendant.

MAHONEY, District Judge.

The plaintiffs, Alice S. Keefe, Gertrude S. Keefe, and Mary R. Keefe, all of the District of Rhode Island, have brought this action of assumpsit against Joseph V. Broderick, Collector of Internal Revenue of the United States of America for the District of Rhode Island, for the recovery of certain estate taxes in the sum of $3,-668.54, allegedly illegally assessed against the estate of John W. Keefe, deceased, and paid by said plaintiffs as residuary legatees.

A claim for refund of said taxes has been made according to the provisions of the law and the regulations of the Secretary of the Treasury established in pursuance thereof, and has been denied.

Jury trial has been waived and an agreed statement of facts has been filed. The plaintiff has presented certain additional evidence.

The parties have filed written motions for judgment.

The question here presented for the court's decision is: Whether there should be included in the gross estate of the dece-

dent the proceeds of two life insurance policies, in each of which he had at the time of his death nominated a daughter as a vested irrevocable beneficiary, and had declared that her consent in writing was necessary before any subsequent change in the beneficial interest could be made, and in each of which he had expressly withheld any vested interest from the contingent beneficiaries named thereunder, and had expressly reserved the right to cancel or change the interests of such contingent beneficiaries without their consent.

The statute involved is the Revenue Act of 1926, c. 27, 44 Stat. 9, 70, 71, as amended by Section 401 of the Revenue Act of 1934, c. 277, 48 Stat. 680, 752, 26 U.S.C.A. § 411. It is as follows:

"[Sec. 302.] The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—

"(a) To the extent of the interest therein of the decedent at the time of his death;

\* \* \* \* \* \*

" (d) (1) To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power, either by the decedent alone or in conjunction with any person, to alter, amend, or revoke, or where the decedent relinquished any such power in contemplation of his death, except in case of a bona fide sale for an adequate and full consideration in money or money's worth.

\* \* \* \* \* \*

" (g) To the extent of the amount receivable by the executor as insurance under policies taken out by the decedent upon his own life; and to the extent of the excess over $40,000 of the amount receivable by all other beneficiaries as insurance under policies taken out by the decedent upon his own life."

The pertinent regulations thereunder are:

Treasury Regulations 80 (1937 Ed.):

"Art. 20 Transfers with power to change the enjoyment.—(a) Transfers included.—Subdivision (d) of section 302 of the Revenue Act of 1926, as amended, embraces a transfer by trust or otherwise (of not amounting to a bona fide sale for an adequate and full consideration in money or money's worth) when at the time of decedent's death the enjoyment of the transferred property, or some part thereof or interest therein, was subject to any change through a power exercisable either by the decedent alone, or by him in conjunction with some other person or persons, to alter, or amend, or revoke, or terminate. (See article 15)

" (b) Taxability.—The property or the interest or interests therein so transferred shall be included in the gross estate if coming within any one of the following paragraphs:

\* \* \* \* \* \*

"(2) When the transfer was made after the enactment of the Revenue Act of 1924 (4.01 p. m., eastern standard time, June 2, 1924) and before the amendment of the subdivision by the Revenue Act of 1936 became effective (June 23, 1936), and the decedent's death occurred at any time subsequent to the transfer, and the power was reserved at the time of the transfer and was exercisable by the decedent alone or in conjunction with a person or persons either having or not having a substantial adverse interest or interests in the transferred property, or in conjunction with persons one or more of whom had and one or more of whom had not such an adverse interest.

\* \* \* \* \* \*

"Art. 25. Taxable insurance.—The statute provides for the inclusion in the gross estate of insurance taken out by the decedent upon his own life, as follows: (a) All insurance receivable by, or for the benefit of, the estate: (b) all other insurance to the extent that it exceeds in the aggregate $40,000.

"The term 'insurance' refers to life insurance of every description, including death benefits paid by fraternal beneficial societies, operating under the lodge system. Insurance is considered to have been taken out by the decedent, whether or not he made the application, if he acquired the ownership of, or any legal incident thereof in, the policy: but in the case of a decedent dying before November 7, 1934 (the date of approval of the 1934 edition of Regulations 80) the provisions of the second paragraph of article 25 of Regulations 70 (1929 edition) will continue to apply. Legal incidents of ownership in the policy include, for example: The right of the insured or his estate to its economic bene-

fits, the power to change the beneficiary, to surrender or cancel the policy, to assign it, to revoke an assignment, to pledge it for a loan, or to obtain from the insurer a loan against the surrender value of the policy, etc.

"Art. 27. Insurance receivable by other beneficiaries.—The statute requires the inclusion in the gross estate of the decedent of the proceeds of any policy, or the aggregate proceeds of all policies, not receivable by or for the benefit of decedent's estate, to the extent that such proceeds exceed $40,000 regardless of when the policy was or the policies were issued, if the decedent possessed at the time of his death any of the legal incidents of ownership."

The decedent, John W. Keefe, on May 17, 1904, took out a policy of life insurance on his own life, which provided for the payment of $10,000 to his executors, administrators or assigns upon proof of his death. On March 31, 1905, he took out a similar policy of $15,000. On April 18, 1930, he executed a "nomination of beneficiary and request" with respect to the $10,000 policy in which his daughter, Gertrude S. Keefe, was named as "vested irrevocable beneficiary". The nomination contained the following provisions:

"I, John W. Keefe, the insured under the aforesaid policy, do hereby nominate and request that if the said policy becomes a claim by reason of my death, the proceeds due thereunder be retained by the Company in accordance with the conditions and provisions of Instalment Option C and paid as follows:

"The interest income shall be paid monthly to my daughter, Gertrude S. Keefe, if she survives me, during her lifetime.

"At the death of the survivor of myself and my said daughter the proceeds or principal sum shall be divided and paid in equal lump sum payments to the then surviving issue of my said daughter.

"If the survivor of myself and my said daughter is not survived by any issue of my said daughter the proceeds or principal sum shall be divided into equal shares for my other daughters, Alice S. Keefe and Mary R. Keefe which shares shall be paid as follows:

"The shares of such daughters shall be retained under the said Option C and the interest income thereon paid monthly to my said daughters during their respective lives. At the death of either of my said daughters her respective share of the principal and interest shall pass and be paid to the survivor of my said daughters in accordance with the conditions and provisions governing the payment of her respective share. At the death of the survivor of my said daughters the principal sum retained by the Company shall be paid in one sum to the estate of such survivor.

"If at the death of the survivor of myself and my said daughter, Gertrude S. Keefe, no issue of my said daughter are then living and one of my said other daughters is not then living, all of the proceeds or principal sum shall be paid to the survivor of my said other daughters in accordance with the conditions and provisions governing the payment of such survivor's share.

"If my said daughter, Gertrude S. Keefe, survives me and no issue of hers survive her and neither of my said other daughters survive her, the principal sum retained by the Company shall be paid in one sum to the estate of my said daughter, Gertrude S. Keefe, at her death.

"My said daughter, Gertrude S. Keefe, is herewith nominated as a vested, irrevocable beneficiary, and I declare that her consent in writing is necessary before any subsequent change in the beneficial interest can be made. However, I expressly withhold any vested interest from the contingent beneficiaries named hereunder, and the right is expressly reserved to cancel or change the interests of such contingent beneficiaries without their consent.

"It is especially agreed that the right is reserved to myself and my said daughter, Gertrude S. Keefe, to secure loans from the Company on this policy and to assign the same to the Company on the signatures of myself and my said daughter, Gertrude S. Keefe, as collateral security for such loans, without the consent of any contingent beneficiary and without annulling or altering the terms of this nomination and request.

"It is understood and agreed that the last survivor of my said daughters shall have the privilege while receiving interest income payments of withdrawing in one sum all of the principal sum retained by the Company. * * *"

On April 18, 1930, he executed a "nomination of beneficiary and request" with

respect to the $15,000 policy which contained the same provisions as herein set forth, with the exception that one of his other daughters, Mary R. Keefe, was named as the "vested irrevocable beneficiary". The decedent died on August 3, 1935, and the Commissioner of Internal Revenue included the full value of the proceeds of these policies in the gross estate.

■ Section 302(g), hereinbefore cited, requires the inclusion in the gross estate of a decedent of the proceeds of life insurance "to the extent of the amount receivable by the executor as insurance under policies taken out by the decedent upon his own life; and to the extent of the excess over $40,000 of the amount receivable by all other beneficiaries as insurance under policies taken out by the decedent upon his own life". 26 U.S.C.A. 411(g). But it has been determined that the proceeds of such policies which are payable to named beneficiaries are included in the gross estate only when the decedent at the time of his death possessed legal incidents of ownership. Chase National Bank v. United States, 278 U.S. 327, 49 S.Ct. 126, 73 L.Ed. 405, 63 A.L.R. 388; Bingham et al. v. United States, 296 U.S. 211, 56 S.Ct. 180, 80 L.Ed. 160.

It is recited in Regulation 80 (1934 ed.) Article 25, hereinbefore referred to, that "Legal incidents of ownership in the policy include, for example: The right of the insured or his estate to its economic benefits, the power to change the beneficiary, to surrender or cancel the policy, to assign it, to revoke an assignment, to pledge it for a loan, or to obtain from the insurer a loan against the surrender value of the policy, etc."

■ The decedent did not reserve the right, and he had no power with respect to the interests of the primary beneficiaries, to change the beneficiary, to obtain loans on the policies, to surrender the policies for cash, or to assign or to pledge the policies without the consent in writing of the said primary beneficiaries. Under the terms of the policies loans were to be made upon an assignment of the contract to the company. The signatures of the "vested irrevocable beneficiaries" in each instance would have been required to make a complete and valid assignment. These policies are governed by the law of the Commonwealth of Massachusetts and under that law the consent of such beneficiaries is necessary. Haskell v. Equitable Life Assurance Society of U. S., 181 Mass. 341, 63 N.E. 899; Note, 68 A.L.R. 1222; Gould v. Emerson, 99 Mass. 154, 96 Am. Dec. 720; In re Simmons & Griffin, 1 Cir., 255 F. 521.

■ The fact that the interests of the primary beneficiaries were dependent upon their surviving the decedent is not controlling on the question of retention by the decedent of legal incidents of ownership. Bingham v. United States, supra. Nor was the right of the decedent to receive dividends on the policies so controlling, for they were merely a return of premium. They were a return of capital.

■ It seems clear that the decedent at the time of his death had no legal incidents of ownership of the said policies with respect to the interests of said "vested irrevocable beneficiaries". The value of said interests is not to be included in the gross estate and cannot be taxed. Levy's Estate v. Commissioner, 2 Cir., 65 F.2d 412; Lit et al. v. Commissioner, 3 Cir., 72 F.2d 551.

■ Reservation of the right to change the contingent beneficiaries under said policy remained in the decedent up to the time of his death. The interests of the contingent beneficiaries could be changed without their consent; the interests of the primary beneficiaries could be changed only with their consent. The consent in writing of the primary beneficiaries was necessary, under the nomination and request forms attached to each policy, before any subsequent change in the beneficial interests could be made.

The words "beneficial interest" are to be taken to mean all beneficial interests under said policies. Assuming the naming of contingent beneficiaries was a beneficial interest, the consent of the primary beneficiaries was not necessary, as the plaintiffs urge, to change such contingent beneficiaries.

It is set forth in the said nomination of beneficiary and request that "However, I expressly withhold any vested interest from the contingent beneficiaries named hereunder, and the right is expressly reserved to cancel or change the interests of such contingent beneficiaries without their consent."

A reading of this language indicates at once that the consent of the primary beneficiary was not required.

Yet the plaintiffs now urge that such a consent was necessary. Objection is made that this ground for refund was not set forth in the claim for refund in detail and under oath as required. An examination of the claim for refund and the notice of its rejection by the Commissioner of Internal Revenue does not show that the claim, namely, that the consent of the primary beneficiary was necessary to change the contingent beneficiaries, was set forth in the required detail.

However, the plaintiffs do set forth with the required definiteness and certainty that the contingent interests should not be included in the gross estate. Therefore, it is proper to consider this claim in this action. The contingent interests did not become vested or resolved at the death of the decedent. It is exceedingly remote that the contingent beneficiaries would ever become entitled to their remainder interest. It may be that the primary beneficiaries, by surviving the contingent beneficiaries, may become entitled to the principal of the insurance proceeds.

"A power to change a contingent beneficiary should seemingly involve tax consequences only if the contingency is resolved and his interest in the proceeds becomes otherwise vested in title at or prior to the insured's death. Otherwise, a power to divest an interest impossible of vesting in title or in possession and enjoyment at the insured's death would not seem to be of a testamentary character." Clark, Inheritance and Estate Taxes on Life Insurance (1935) 93, 124.

It is urged that the decedent made an inter vivos transfer of property over which he retained a power to alter, amend or revoke, and therefore the full value of the policies is includible in the gross estate under the provisions of Section 302(d) hereinbefore set forth. But this suggestion has been denied in the case entitled Walker v. United States, 8 Cir., 1936, 83 F.2d 103, where the court says, at pages 107 and 111, that:

"It must be kept in mind that this is an estate tax upon the proceeds from life insurance. An estate tax is an excise tax upon the privilege of transferring or transmitting property by reason of death and is not a tax on the property itself. It follows that, unless there is such transfer from the decedent—unless there was something which passed from the decedent upon death—there has been no transfer; no privilege of transfer has been exercised; and there is nothing which can be subjected to an excise tax on such privilege. Therefore, where life insurance proceeds are involved, the initial inquiry is as to what, if anything, has passed from the decedent because of his death. * * *

"However, appellee contends that, even though no assignment or loan pledge could have been of these policies without the consent of appellant beneficiary, yet the proceeds are taxable under the principle of Helvering v. City Bank Farmers' Trust Co., 296 U.S. 85, 56 S.Ct. 70, 80 L.Ed. [62]. The Helvering Case is not applicable for two reasons: First, that case had to do with another provision (section 302(d) of the Revenue Act of 1926, 44 Stat. 70, 71) which is entirely different and was intended by Congress to be different from section 302(g) [26 U.S.C.A. § 411(g)] of that act, here involved. Congress expressly recognized and treated proceeds from insurance on the life of a decedent as a separate matter from the situation dealt with in section 302(d). Therefore, section 302(g) is not controlled or affected by section 302(d), and a construction of the latter is not controlling in determining the meaning and application of the former. Section 302(g). Second, section 302(d) deals only with 'transfers' of property from the decedent. Here there was no transfer from the decedent within the meaning of that section or at all. The property rights here find birth in the policy; are as between the beneficiary and the insurer; and the rights of the beneficiary came into being with the life of the policy. The result is that the proceeds of these two policies are not taxable under the Revenue Act of 1926 as part of the gross estate of this decedent."

The judgment is for the plaintiffs, and the amount to be entered shall be in accordance with the terms of the stipulation filed in the case.