## COWLES v. UNITED STATES.
### No. 38.

Circuit Court of Appeals, Second Circuit.

Nov. 14, 1945.

Eugene T. McQuade and Tompkins, Boal, & Tompkins, all of New York City, for appellant.

John B. Creegan, and John F. X. Mc-Gohey, U. S. Atty., both of New York City, for appellee.

Before L. HAND, CHASE, and FRANK, Circuit Judges.

L. HAND. Circuit Judge.

The plaintiff appeals from a judgment, dismissing her complaint upon an agreed statement of facts, in an action to recover estate taxes, alleged to have been unlawfully collected from her as executrix. The only question is as to the validity of the tax. The facts as stipulated are as follows. The plaintiff's testator had been married to a wife, with whom on October 22, 1937 he made a separation agreement, in which he provided for her support and that of their child by stipulated payments to be made during his life, and an annuity after his death if she survived him. The last provision is the turning point of the case and read as follows. The decedent would "endeavor to maintain life insurance policies of which the Wife shall be the beneficiary and which will pay in the event of his death, approximately $200 per month guaranteed for life. The Husband agrees that the designation of the Wife as beneficiary shall be made irrevocable except in the event of the Wife's remarriage or death * * *. The Husband further agrees that in the event he cannot pay the premiums, he will agree, upon the request of the Wife, to give such instructions as will change the policies into paid up policies or extended term insurance." The agreement was preparatory to a divorce between the parties, the decree in which, entered in December, 1937, approved it and incorporated its provisions in place of alimony. As of February 20, 1938, the decedent in performance of the agreement took out one insurance policy, providing for an annuity of $200 a month payable to his wife during her life, beginning at his death. Upon this he paid the premiums until May 20, 1940; and, although none were paid thereafter, we are to assume that the policy had been kept alive at the time of his death, March 23, 1941. He reserved no power to change the beneficiary or any other control over the policy; and the question is whether such a policy was part of his taxable estate. The judge held that it was.

The defendant argues that the policy was within § 811(c) of the Internal

Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 811(c), for two reasons: first, that it was made "in contemplation of death"; second, that it was "intended to take effect in * * * enjoyment at or after * * * death." The first argument is plainly without basis. The decedent was forty years old, his wife was forty-two; they were arranging a divorce, and in preparation he agreed to provide for her and their child while he lived; it was only in consummation of that purpose that he added the policy. That was indeed done "in contemplation of death," but that motive was subsidiary, one which was as far as can be imagined from being "dominant," as it must be to bring the transaction within § 811(c). United States v. Wells, 283 U.S. 102, 51 S.Ct. 446, 75 L.Ed. 867. What really actuated him was the desire to be rid of all obligations towards her; her right to support while he lived, and to inherit when he died.

In discussing the second argument we shall assume that the decedent, in taking out and "maintaining" the policy "made a transfer" "intended to take effect in * * * enjoyment at or after his death"; that is, that the premiums, which were all that literally he did "transfer," are to be regarded as embodied in the policy; and the policy, as identical with the premiums. However, the policy was within § 811(g), and the Regulations (Regulations 80, Arts. 25 and 27); and if the "amount receivable" under it is to be deemed "receivable by * * * other beneficiaries" than the "executor" of the testator, not only does the limitation of $40,000 of § 811(g) apply, but under Article 27, no part of the excess should be included in the estate. This follows from the second subdivision of that article, because (1) the policy "was taken out * * * before January 10, 1941"; and (2) the decedent retained no "legal incidents of ownership at any time after such date." The judge supposed that the decedent had power to "cancel the policy," but that was a mistake, unless "cancelling" includes allowing a policy to lapse for the failure to pay the premiums, which it certainly does not; and which, even if it did, the decedent had denied himself by promising to "maintain" the policy. He had retained no greater power over the policy, than if he had turned over to his wife a number of negotiable bonds or shares of stock. The defendant does not suggest that Article 27 of Regulations 80 is not

valid, and we assume for argument that it is.

The defendant does however argue that the case falls within the first clause of § 811(g) because in substance the proceeds were "receivable by the executor," particularly in the light of Article 26, Regulations 80, which puts within that clause "insurance effected to provide funds to meet the estate tax, and any other taxes, debts or charges which are enforceable against the estate." The only part of this language which could fit the facts at bar is the last clause: "charges enforceable against the estate," and then only if a widow's right of inheritance under § 18 of the New York Decedents Estate Law, Consol.Laws, c. 13, is such a charge. The policy was only a part of the consideration for the wife's release of both her right to support during the decedent's life and her claim under § 18 just mentioned; the rest of the consideration being the promise to contribute to her support and that of their child while the decedent lived. However, since there was nothing in the agreement to justify allocating the policy to one or another of the rights released, we shall consider it as being given in consideration for the release of both. So far as it was intended to serve as a substitute for the decedent's marital duty to support the wife, it certainly did not fall within Article 26, for that duty ended with the decedent's death and was not a charge "enforceable against the estate." At first blush it might be thought that the widow's right of inheritance was such a charge; but § 812(b) (3) is to the contrary, for it enacts that the release of "marital rights in the decedent's * * * estate, shall not be considered to any extent a consideration 'in money or money's worth'" when "claims against the estate" are to be deducted. On reflection this is seen to be inevitable, because, whatever might be thought about dower, over which the husband has no power of disposition, the wife's right of inheritance cannot in the nature of things be a "charge" against the estate. It is nothing more than an enforced devolution of a part of the estate itself, like devolution in intestacy; it simply deprives the decedent pro tanto of any power to direct the devolution. A payment, which induces the wife to release her interest, does not therefore extinguish any claim which could decrease the net estate. The most that could be said for including a policy which induces such a release, would,

be that, if it had not been procured, the estate would have been enlarged by the premiums paid to maintain it. That would be an inference, which would be not only unwarranted in fact, but which could lead to the inclusion in the estate of only the premiums actually paid.

The defendant answers that, even if the decedent had no duty to support his wife after his death, and, even if her claim under § 18 of the Decedent's Estate Law of New York was not "enforceable" against his estate, nevertheless by the separation agreement he created a claim, extending beyond his death for which the policy was "to provide funds." But the decedent did not promise to pay his wife anything after his death; on the contrary every obligation which he assumed ended with his life. The fact that the premiums, which he did undertake to pay while he lived, would create an obligation of the insurer to pay an annuity after his death, did not make that annuity a charge against his estate. Quite the contrary, it was precisely because he wished to be quit of all obligations to her when he died, that he substituted the promise of the insurer. Had he bought the annuity for a lump sum, it is incredible that the fallacy of the argument should not have appeared; but the situation is no different because the consideration was spread over a period, even the uncertain period of the decedent's life. Judgment reversed; cause remanded with instructions to enter judgment for the plaintiff.