ESTATE OF CHESTER H. BOWERS, DECEASED, SECURITY-FIRST NA-
TIONAL BANK OF LOS ANGELES, EXECUTOR, PETITIONER, *v.* COMMIS-
SIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 37909.   Filed February 21, 1955.

*Wilson B. Copes, Esq.*, for the petitioner.
*George E. Constable, Esq.*, for the respondent.

912

914

OPINION.

Bruce, *Judge*: Respondent contends[1] that the proceeds of two life insurance policies on decedent's life which were made available to decedent's former wife are includible in the gross estate under section 811 (g) (2)[2] of the Internal Revenue Code of 1939. Petitioner argues that the proceeds of said policies should not be included in the gross estate.

On April 22, 1932, decedent and his former wife, Esther, entered into a property settlement agreement. The first question for determination is the rights of decedent in the policies in question subsequent to the agreement. Prior to the agreement decedent possessed all incidents of ownership in policy number 1960656, and Esther possessed all incidents of ownership in policy number 1960657. Esther was the beneficiary under both policies and their children were the contingent beneficiaries. No further changes were made in the policies by endorsement prior to decedent's death. But the agreement itself, a copy of which was furnished the insurer, provided that all life insurance benefits would become the separate property of the decedent subject to his obligation under the agreement to maintain insurance. Decedent promised in the agreement to carry life insurance upon his life in the sum of $50,000 with Esther as the beneficiary while she was living and unmarried and thereafter with their three children or the survivor of them named as the beneficiaries.

Respondent contends that the agreement vested decedent with all incidents of ownership in all policies of insurance possessed at the date of the agreement, including the policies in question. He further contends that the obligation assumed by decedent to maintain insurance did not limit his unrestricted rights in the policies in question because

---

[1] Respondent did not argue on brief and is deemed to have abandoned any contention that section 811 (c) or 811 (g) (1) is applicable.

[2] SEC. 811. GROSS ESTATE. [As amended by sec. 404 (a), 1942 Act.]

The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside of the United States—

\* \* \* \* \* \* \*

(g) Proceeds of Life Insurance.—

\* \* \* \* \* \* \*

(2) Receivable by Other Beneficiaries.—To the extent of the amount receivable by all other beneficiaries as insurance under policies upon the life of the decedent (A) purchased with premiums, or other consideration, paid directly or indirectly by the decedent, in proportion that the amount so paid by the decedent bears to the total premiums paid for the insurance, or (B) with respect to which the decedent possessed at his death any of the incidents of ownership, exercisable either alone or in conjunction with any other person. For the purposes of clause (A) of this paragraph, if the decedent transferred, by assignment or otherwise, a policy of insurance, the amount paid directly or indirectly by the decedent shall be reduced by an amount which bears the same ratio to the amount paid directly or indirectly by the decedent as the consideration in money or money's worth received by the decedent for the transfer bears to the value of the policy at the time of the transfer. For the purposes of clause (B) of this paragraph, the term "incident of ownership" does not include a reversionary interest.

no particular policies were mentioned in the agreement. Petitioner objects strenuously to the latter contention.

The agreement provides that, with respect to the $50,000 of insurance specified, decedent "shall not, at any time, attempt directly or indirectly to change or cause to be changed, the beneficiary or beneficiaries under said insurance policy or policies." Thus, the beneficiaries were to be irrevocable, and one obviously cannot become the irrevocable beneficiary of an unspecified policy of insurance. It is evident that the parties to the agreement intended that certain specified policies were, or were to be, committed to the agreement. The parties to the instant proceeding have stipulated that from the date of the agreement until decedent's death the insurance called for in the agreement was represented by the two policies in question. The exhibits support this stipulation. We find that the policies were committed to the agreement even though they were not specifically mentioned therein. Cf. *Shoudy* v. *Shoudy*, 55 Cal. App. 344, 203 Pac. 433.

In California where husband and wife contract in a property settlement agreement with respect to life insurance policies, the agreement controls the disposition of the proceeds of the policies subject to any superior equities in third parties. Thus, even though policy number 1960656 by its terms reserved to the decedent the right to change the beneficiary, the agreement vested decedent's former wife "with an equitable interest which may not be divested without her consent." *Waxman* v. *Citizens National Trust & Savings Bank*, 123 Cal. App. 2d 145, 266 P. 2d 48, 50. See also *Mutual Life Insurance Co.* v. *Franck*, 9 Cal. App. 2d 528, 50 P. 2d 480; *Shoudy* v. *Shoudy, supra; Thompson* v. *Thompson*, (C. A. 8) 156 F. 2d 581. Also decedent could no longer divest the children of their right to the proceeds if their mother died or remarried prior to his death. *Waxman* v. *Citizens National Trust & Savings Bank, supra; Reliance Life Insurance Co. of Pittsburgh* v. *Jaffe*, 121 Cal. App. 2d 241, 263 P. 2d 82; *Mutual Life Insurance Co.* v. *Henes*, 8 Cal. App. 2d 306, 47 P. 2d 513; *Chilwell* v. *Chilwell*, 40 Cal. App. 2d 550, 105 P. 2d 122; *O'Brien* v. *New England Mutual Life Insurance Co.*, 128 N. J. Eq. 590, 17 A. 2d 555. And, as the insurer was furnished with a copy of the agreement, it also probably was bound thereby. *Morrison* v. *Mutual Life Insurance Co. of New York*, 15 Cal. 2d 579, 103 P. 2d 963. Furthermore, by promising not to "attempt directly or indirectly to change or cause to be changed, the beneficiary or beneficiaries under said insurance policy or policies," decedent not only lost any right to revoke or change the beneficiaries, but also relinquished any right to surrender the policies for cash or to borrow thereon. *Morse* v. *Commissioner*, 100 F. 2d 593, affirming 37 B. T. A. 399; *Helvering* v. *Parker*, 84 F. 2d 838, affirming 30 B. T. A. 342; *Morrison* v. *Mutual Life Insurance Co. of New York, supra.*

The above conclusions dispose of respondent's contention that the proceeds of the policies are includible in the gross estate because at his death decedent possessed "incidents of ownership" in the policies within the purview of subsection 811(g)(2)(B). Cf. *George F. Hurd*, 9 T. C. 681; *Cowles* v. *United States*, 152 F. 2d 212. The only rights in either policy which decedent possessed at his death were a reversionary interest and the right to dividends. Section 811(g)(2) specifically provides that "For the purposes of clause (B) of this paragraph, the term 'incident of ownership' does not include a reversionary interest." [3] And, the right to so-called "dividends" on a mutual policy of insurance, which may be applied against the current premium and are nothing more than a reduction in the amount of premiums paid (cf. *C. Francis Weeks*, 16 T. C. 248; Regs. 111, sec. 29.22(a)-12), is not an incident of ownership. *Estate of Louis J. Dorson*, 4 T.C. 403; *D. W. Blacksher et al., Executors*, 38 B. T. A. 998. See also *Keefe* v. *Broderick*, 25 F. Supp. 957, reversed on other grounds 112 F. 2d 293; *Emily King Parker et al., Trustees*, 30 B. T. A. 342, affd. 84 F. 2d 838; *Golden* v. *Commissioner*, 113 F. 2d 590, 593, footnote 3.

Respondent also contends that the proceeds of the policies are includible in the gross estate under subsection 811(g)(2)(A) because the policies were "purchased with premiums, or other consideration, paid directly or indirectly by the decedent * * *." It has been stipulated that decedent paid all of the premiums subsequent to the 1932 property settlement agreement, and therefore the requirements of subsection 811(g)(2)(A) are satisfied. Petitioner argues that because the decedent was obligated by the property settlement agreement with his former wife to maintain the policies of insurance, the premiums were not paid by decedent, but were paid indirectly by his former wife. We find this argument ingenious but without merit or probative effect.

The proceeds of the policies are includible in the gross estate under subsection 811(g)(2)(A), by reason of the fact that decedent paid the premiums, "in proportion that the amount so paid by the decedent bears to the total premiums paid for the insurance, * * *." Section 404(c) of the Revenue Act of 1942 provides:

in determining the proportion of the premiums or other consideration paid directly or indirectly by the decedent (but not the total premiums paid) the amount so paid by the decedent on or before January 10, 1941, shall be excluded if at no time after such date the decedent possessed an incident of ownership in the policy.

We have held that the decedent did not possess an "incident of ownership" in the policies subsequent to the 1932 agreement with the exception of a reversionary interest. The provision in section

---

[3] Section 503 of the Revenue Act of 1950, *infra*, does not modify or relate to this provision. But see *Bank of New York* v. *United States*, 115 F. Supp. 375, contra.

811(g)(2) that "the term 'incident of ownership' does not include a reversionary interest," applies only to clause (B) of that paragraph, and a reversionary interest is an "incident of ownership" for the purposes of section 404(c), Revenue Act of 1942. *Estate of Herman D. Brous*, 10 T. C. 597. However, section 404(c) was amended by section 503, Revenue Act of 1950, as follows:

SEC. 503. REVERSIONARY INTERESTS IN CASE OF LIFE INSURANCE.

(a) AMENDMENT OF SECTION 404 (c) OF REVENUE ACT OF 1942.—Effective with respect to estates of decedents dying after October 21, 1942, section 404(c) of the Revenue Act of 1942 is hereby amended by adding at the end thereof the following: "For the purposes of the preceding sentence, the term 'incident of ownership' includes a reversionary interest only if (1) at some time after January 10, 1941, the value of such reversionary interest exceeded 5 per centum of the value of the policy, and (2) the reversionary interest arose by the express terms of the policy or other instrument and not by operation of law. As used in this subsection, the term 'reversionary interest' includes a possibility that the policy, or the proceeds of the policy, (A) may return to the decedent or his estate, or (B) may be subject to a power of disposition by him. The value of a reversionary interest at any time shall be determined (without regard to the fact of the decedent's death) by usual methods of valuation, including the use of tables of mortality and actuarial principles, pursuant to regulations prescribed by the Secretary. In determining the value of a possibility that the policy or proceeds thereof may be subject to a power of disposition by the decedent, such possibility shall be valued as if it were a possibility that such policy or proceeds may return to the decedent or his estate."

We have found as a fact that at no time after January 10, 1941, did the value of decedent's reversionary interest in either policy exceed 5 per cent of the value of the policy. Therefore, decedent's reversionary interest was not an "incident of ownership" within the purview of section 404(c), Revenue Act of 1942, as amended. Therefore the premiums paid by the decedent on or before January 10, 1941, shall be excluded "in determining the proportion of the premiums or other consideration paid directly or indirectly by the decedent (but not the total premiums paid)" for the purpose of computing the proportion of the proceeds of the policies to be included in the gross estate under subsection 811(g)(2)(A). *Estate of Albert Dudley Saunders*, 14 T. C. 534. Eight twenty-thirds of the total amount of the premiums were paid by the decedent subsequent to January 10, 1941, and that proportion of the total proceeds of the policies, or $17,727.30, is includible in the gross estate unless the exception contained in section 811(g)(3)[4]

---

[4] SEC. 811. GROSS ESTATE. [As amended by sec. 404 (a), 1942 Act.]

The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside of the United States—

\* \* \* \* \* \* \*

(g) PROCEEDS OF LIFE INSURANCE.—

\* \* \* \* \* \* \*

(3) TRANSFER NOT A GIFT.—The amount receivable under a policy of insurance transferred, by assignment or otherwise, by the decedent shall not be includible under para-

or in the second sentence of section 811(g)(2) of the 1939 Code is applicable.

In order to qualify under section 811 (g) (3) or under the second sentence of section 811 (g) (2), there must be a transfer of "a policy of insurance." Furthermore, section 811 (g) (3) does not apply if the transfer constitutes "a gift, in whole or in part, under Chapter 4," and the second sentence of section 811 (g) (2) is not called into play unless the decedent receives in return for the transfer "consideration in money or money's worth."

We find it unnecessary to decide whether making Esther the irrevocable beneficiary while living and unmarried was equivalent to a transfer of the policies (cf. 6 Couch, Cyclopedia of Insurance Law (1930), sec. 14582). For the reasons hereinafter stated, the alleged transfer was founded upon a promise or agreement and was not shown to have been in return for a "consideration in money or money's worth," as that term is limited for the purposes of subchapter A of chapter 3 of the 1939 Code by the last sentence of section 812 (b), *infra*. Therefore, petitioner has not shown that the second sentence of section 811 (g) (2) is applicable or that the alleged transfer did not constitute a "gift" and hence came within the purview of section 811 (g) (3). Cf. *Harris* v. *Commissioner*, 340 U. S. 106.

In the alternative petitioner contends that, if the proceeds of the policies are includible in the gross estate, the estate is entitled to an offsetting deduction. Section 812 (b) [5] of the 1939 Code allows the

---

graph (2) (A) if the transfer did not constitute a gift, in whole or in part, under Chapter 4, or, in case the transfer was made at a time when Chapter 4 was not in effect, would not have constituted a gift, in whole or in part, under such chapter had it been in effect at such time.

[5] SEC. 812. NET ESTATE.

For the purpose of the tax the value of the net estate shall be determined, in the case of a citizen or resident of the United States by deducting from the value of the gross estate—

\* \* \* \* \* \* \*

(b) EXPENSES, LOSSES, INDEBTEDNESS, AND TAXES.—Such amounts—

(1) for funeral expenses,

(2) for administration expenses,

(3) for claims against the estate,

(4) for unpaid mortgages upon, or any indebtedness in respect to, property where the value of decedent's interest therein, undiminished by such mortgage or indebtedness, is included in the value of the gross estate, and,

(5) \* \* \* \* \* \* \*

as are allowed by the laws of the jurisdiction, whether within or without the United States, under which the estate is being administered, but not including any income taxes upon income received after the death of the decedent, or property taxes not accrued before his death, or any estate, succession, legacy, or inheritance taxes. The deduction herein allowed in the case of claims against the estate, unpaid mortgages, or any indebtedness shall, when founded upon a promise or agreement, be limited to the extent that they were contracted bona fide and for an adequate and full consideration in money or money's worth; except that in any case in which any such claim is founded upon a promise or agreement of the decedent to make a contribution or gift to or for the use of any donee described in subsection (d) for the purposes specified therein, the deduction for such claim shall not be so limited, but shall be limited to the extent that it would be allowable as a deduction under subsection (d) if such promise

deduction of "any indebtedness in respect to property where the value of the decedent's interest therein, undiminished by such * * * indebtedness, is included in the value of the gross estate," but the deduction of "any indebtedness shall, when founded upon a promise or agreement, be limited to the extent that they were contracted bona fide and for an adequate and full consideration in money or money's worth; * * *."

Decedent was obligated at his death under the 1932 property settlement agreement to have in force life insurance in the face amount of $50,000 payable to his former wife. If decedent had not fulfilled this obligation, his estate certainly could have been required to make up the difference to the extent of $50,000. *Waxman v. Citizens National Trust & Savings Bank, supra.* Cf. *Estate of Myles C. Watson,* 20 T. C. 386, affd. (C. A. 2) 216 F. 2d 941. In our opinion this obligation represented an "indebtedness" within the purview of section 812 (b) (4). The "indebtedness" was discharged with the proceeds of the insurance, and it has been held that to the extent of $17,727.30 the proceeds of the policies should be included in the value of the gross estate. Cf. *Estate of Silas B. Mason,* 43 B. T. A. 813. The indebtedness amounted to $50,000, but only eight twenty-thirds of the "indebtedness" was discharged out of property includible in the gross estate. Therefore, unless otherwise limited by the provisions of section 812 (b), the estate is entitled to a deduction of $17,391.30.

Petitioner contends that the obligation or "indebtedness" was "founded" upon the divorce decree and not upon the "promise or agreement," and therefore it was not necessary to prove that it was "contracted * * * for an adequate and full consideration in money or money's worth." In *Commissioner v. Maresi,* (C. A. 2) 156 F. 2d 929, affirming 6 T. C. 582, which was approved in *Harris v. Commissioner, supra,* and relied upon in *Estate of Myles C. Watson, supra,* Judge Learned Hand, speaking for the Second Circuit Court of Appeals, stated that if "the divorce court was free to disregard any allow-

---

or agreement constituted a bequest. There shall be disallowed the amount by which the deductions specified in paragraphs (1), (2), (3), (4), and (5) exceed the value, at the time of the decedent's death, of property subject to claims. For the purposes of this section the term "property subject to claims" means property includible in the gross estate of the decedent which, or the avails of which, would, under the applicable law, bear the burden of the payment of such deductions in the final adjustment and settlement of the estate; and, for the purposes of this definition, the value of the property shall be reduced by the amount of the deduction under the next sentence attributable to such property. There shall also be deducted losses incurred during the settlement of estates arising from fires, storms, shipwrecks, or other casualties, or from theft, when such losses are not compensated for by insurance or otherwise, and if at the time of the filing of the return such losses have not been claimed as a deduction for income tax purposes in an income tax return.

For the purposes of this subchapter, a relinquishment or promised relinquishment of dower, curtesy, or of a statutory estate created in lieu of dower or curtesy, or of other marital rights in the decedent's property or estate, shall not be considered to any extent a consideration "in money or money's worth."

ances made in the separation agreement, the allowances were authentically its own, even in cases where it expressly accepted as proper the allowances actually agreed upon." In such cases the debt is "founded" upon the decree and not the agreement as the decree is "the legal transaction which creates the obligation."

In California, however, "A property settlement agreement * * * that is not tainted by fraud or compulsion or is not a violation of the confidential relationship of the parties is valid and binding on the court." *Adams* v. *Adams*, 29 Cal. 2d 621, 177 P. 2d 265, 267. Also, in a property settlement agreement "a wife may waive alimony in return for a more favorable division of the community property so long as the agreement was valid when made * * *." *Adams* v. *Adams, supra,* 177 P. 2d at p. 269. Where the parties entered into such an agreement, as here, the divorce court could not nullify or change the agreement or award the wife permanent support in addition to or in lieu of her rights under the agreement "unless the validity of the agreement had been placed in issue and it had been held invalid." *Majors* v. *Majors*, 70 Cal. App. 2d 619, 161 P. 2d 494, 497. Also, where, as in the instant case, the wife prays for approval of the agreement in her complaint and the husband defaults, it undoubtedly would be reversible error for the divorce court to withhold its approval of an agreement as fair on its face as the agreement in question. *Majors* v. *Majors, supra; Patton* v. *Patton*, 32 Cal. 2d 520, 196 P. 2d 909. In *Auclair* v. *Auclair*, 72 Cal. App. 2d 791, 801, 165 P. 2d 527, quoted and relied upon by petitioner, the court, in setting aside a property settlement agreement between a husband and wife, specifically found fraud on the part of the husband. It does not conflict in principle with the above-cited authorities.

Furthermore, although the divorce decree foreclosed any possible contention that the property settlement agreement herein was invalid, it had no effect upon the rights and obligations of the parties under the agreement. The divorce court did not order performance of the agreement, and the terms of the agreement indicate that the parties did not intend that it should merge into a subsequent divorce decree. The agreement states that "in the event that either of the parties hereto shall hereafter institute divorce proceedings, such action shall not affect this agreement in any way." Therefore, the agreement did not become an operative part of the decree (*Flynn* v. *Flynn*, 42 Cal. 2d 55, 265 P. 2d 865), the terms of the agreement could not be enforced by contempt proceedings (*Plummer* v. *Superior Court*, 20 Cal. 2d 158, 124 P. 2d 5), and its approval and incorporation by reference in the decree operated only to render the validity of the agreement "*res judicata* in any subsequent action based upon it." (*Flynn* v. *Flynn, supra,* 265 P. 2d at p. 866.) Prior to the entry of the interlocutory de-

cree, the terms of the agreement could have been modified by the courts only if the agreement had been held invalid, *Patton* v. *Patton, supra; Adams* v. *Adams, supra; Dexter* v. *Dexter,* 42 Cal. 2d 36, 265 P. 2d 873. After the decree was entered the agreement was not subject to change without the consent of both parties. *Dexter* v. *Dexter, supra; Flynn* v. *Flynn, supra; Fox* v. *Fox,* 42 Cal. 2d 49, 265 P. 2d 881; *Finnegan* v. *Finnegan,* 42 Cal. 2d 762, 268 P. 2d 873. *Hough* v. *Hough,* 26 Cal. 2d 605, 160 P. 2d 15, relied upon by petitioner is readily distinguishable. See *Dexter* v. *Dexter, supra,* 265 P. 2d at p. 877.

Where the divorce court had no power to modify the agreement unless it held the agreement invalid and rescinded, it was *not* "free" to disregard the provisions of that agreement; and, therefore, the holdings in *Commissioner* v. *Maresi* and *Estate of Myles C. Watson,* both *supra,* do not apply. Even in *McMurtry* v. *Commissioner,* 203 F. 2d 659, 662, reversing in part *George G. McMurtry,* 16 T. C. 168, on the ground that two of the "transfers" involved in that case were not "founded upon a promise or agreement" but upon a divorce decree, the holding was based upon the assumption that the divorce court had within "its discretion to prescribe some different property settlement." The divorce court had no such discretion in the instant case. Cf. *Rosenthal* v. *Commissioner,* (C. A. 2) 205 F. 2d 505, affirming on this point *Paul Rosenthal,* 17 T. C. 1047. Also, where the sole effect of approval and incorporation by reference of the agreement in the decree is to render its validity res judicata in a subsequent action based upon it, the decree under no theory can be said to be "the legal transaction which creates the obligation." *Commissioner* v. *Maresi, supra.* A court decree declining to rescind a contract does not create the parties' obligations under the contract. In the instant case the agreement was the "operative fact" creating the obligation and was the source of the parties' rights. Cf. *Harris* v. *Commissioner; Rosenthal* v. *Commissioner,* both *supra.* Therefore, the obligation or "indebtedness" in respect to the insurance proceeds was "founded upon a promise or agreement" within the purview of section 812 (b).

Petitioner has not proved, nor attempted to prove, that the obligation to maintain life insurance policies was assumed by decedent in return for "full consideration in money or money's worth" within the purview of section 812 (b). The agreement does not disclose the value of the rights and property received by each. Furthermore, each party to the agreement waived any rights to dower or curtesy, or to a statutory estate created in lieu of dower or curtesy, or to any other marital rights in the property or estate of the other [6] which section 812 (b) provides "shall not be considered to any extent a consideration 'in

---

[6] See Deering's California Codes, Probate (1953), secs. 201, 221, 223, 224, 660, 663, 680, 682, 684.

money or money's worth.'" We cannot say as a matter of law that this waiver did not constitute at least part, or even all, of the consideration for the obligation to maintain insurance assumed by the decedent. Petitioner has not maintained its burden of proof and, therefore, it is not entitled to the deduction under section 812 (b) of the Internal Revenue Code of 1939. Cf. *Paul Rosenthal, supra,* 17 T. C. at p. 1058.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

MURDOCK, *J.,* dissents on last point.