## CUMMINGS et al. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 2927.

Circuit Court of Appeals, First Circuit.

Nov. 10, 1934.

Samuel Gottlieb and Israel Gorovitz, both of Boston, Mass., for petitioners.

Helen R. Carloss, Sp. Asst. Atty. Gen. (Frank J. Wideman, Asst. Atty. Gen., and Sewall Key, Sp. Asst. Atty. Gen., on the brief), for Commissioner of Internal Revenue.

Before BINGHAM, WILSON, and MORTON, Circuit Judges.

BINGHAM, Circuit Judge.

The Commissioner of Internal Revenue determined deficiencies for the year 1929 in the income tax returns for that year of Edwin L. Cummings of Providence, R. I., George L. Webb of Boston, Mass., and William N. Stetson, Jr., of East Milton, Mass. They each petitioned the Board of Tax Appeals for a redetermination of the deficiency, which petitions, as they involved the same facts and legal principles, were consolidated and heard together. The Board in each case sustained the rulings of the Commissioner, and the parties are here on petitions for review by the three taxpayers.

The petitioners were stockholders of Storrs & Bement Company, a Massachusetts

corporation engaged in the wholesale paper business.

In the latter part of 1926, or early in 1927, a discussion was had among the officers and directors of Storrs & Bement Company, hereafter referred to as the company, in regard to procuring insurance policies on the lives of some of its officers. On January 10, 1927, policies were procured on the lives of the company's president, William B. Stevenson; and its treasurer, Bryant McQuillen, for $100,000 each. In each policy the company was named as the sole beneficiary. At a meeting of the board of directors held January 10, 1927, the following resolution was adopted:

"Voted: that Whereas Storrs and Bement Company, a corporation duly established and existing by law and having its usual place of business in Boston, Suffolk County, Massachusetts, has recently insured the lives of William B. Stevenson and Bryant McQuillen, officers of said company, for the sum of $100,000 each, and

"Whereas it is not practical to have the proceeds of said policies payable in the form and manner intended by Storrs and Bement Company at the time the lives of the said William B. Stevenson and Bryant McQuillen were insured because of the laws relating to the naming of beneficiaries under insurance policies and because of that fact said policies of insurance are now payable in case of death to the Storrs and Bement Company;

"Voted: that in order to carry out the agreement and understanding of the officers and common stockholders of Storrs and Bement Company in regard to said insurance, it is hereby agreed that if and when a policy of insurance so taken shall become payable by reason of the death of either or both the insured and the proceeds of a policy are paid to Storrs & Bement Company, that Storrs and Bement Company will promptly after receipt of the proceeds of said insurance policy, vote to declare and pay said proceeds as a dividend on the common stock of Storrs and Bement Company, payable to common stockholders of record at the time of the death of said insured; it being understood that the estate of any common stockholder so deceased whose life was insured as aforesaid, shall receive its pro rata share of said proceeds the same as the surviving stockholders previously mentioned."

There was also incorporated in the records of the directors' meeting of the above date a so-called agreement setting forth the matters stated in the resolution quoted with respect to the insurance policies on the lives of the officers and signed by all of the corporation's nine common stockholders. That is, the stockholders agreed that the directors should and authorized them to declare the dividends as above voted.

On February 14, 1928, three other policies totaling $100,000 were procured on the life of William B. Stevenson upon substantially the same terms and conditions as the policy taken out in the prior year.

William B. Stevenson died on January 12, 1929, and soon thereafter the company received payment of $200,000 from the insurance companies on the above policies. Thereafter the company received additional amounts of $1,388.07, representing post mortem dividends, and $6,984.55, representing a payment in settlement of a claim on a $50,000 policy which the company had procured from the Sun Life Insurance Company of Canada, but which policy was not one of those referred to in the votes and agreements specified above. The amounts received from the insurance policies were credited on the books of the corporation to general surplus. All of the above amounts were deposited by the company in a special bank account, which it opened for that purpose, and were not mixed with the other company funds.

A meeting of the board of directors of Storrs & Bement Company was held on February 25, 1929, at which time the vice president stated that William B. Stevenson, president of the corporation, deceased on January 12, 1929; that the $200,000 had been received as the proceeds of the first four policies; and that "in accordance with the terms and provisions of votes of the directors duly passed at meetings held on January 10, 1927, and February 14, 1928, and in accordance with the provisions of agreements signed by all the common stockholders of the company on said January 10, 1927, and February 14, 1928, it now becomes necessary to pay out the proceeds of said policies of insurance in the amount of $200,000 on the life of William B. Stevenson as a cash dividend on the common stock of Storrs & Bement Company, payable to common stockholders of record at the date of the death of said William B. Stevenson." And:

"Upon motion duly made and seconded and in accordance with and in pursuance of said votes and agreements of January 10, 1928 and February 14, 1928, the following resolution was unanimously adopted:

"That a cash dividend of 50% ($50.00 a share) on the par value of the common capi-

tal stock of $400,000 consisting of 4000 shares each of the par value of $100, said dividend amounting to $200,000, be paid on February 25, 1929, to common stockholders of record on that date [January 12, 1929]."

By similar corporate actions had on March 12, 1929, and May 27, 1929, authorization was given for distribution to the common stockholders of the further amounts of $1,388.07 and $6,984.55 referred to above.

The surplus of the company on January 1, 1929, was $224,945.78 and on June 30, 1929, $250,307.58. These amounts were exclusive of any proceeds from insurance policies.

At the date of Stevenson's death there were seven common stockholders of Storrs & Bement Company besides the estate of the decedent, which held 2,200 shares of common stock. The estate sold all of its common stock on March 9, 1929, and by the purchase of this stock six new stockholders were added to the list and the shares of the old surviving stockholders were increased in varying amounts.

All of the premiums on the aforesaid insurance policies were paid by the company.

In their returns for the calendar year 1929, none of the petitioners included the amounts thus received from the company in his taxable income. The Commissioner and the Board determined that such amounts represent cash dividends and are taxable as such to the petitioners.

The Internal Revenue Act of 1928 (chapter 852, 45 Stat. 791), under which these deficiencies were assessed, provides in section 22 (a), (b) (1), 26 USCA § 2022 (a), (b) (1) as follows:

"Sec. 22. *Gross Income*

"(a) *General Definition.* 'Gross income' includes gains, profits, and income derived from salaries, wages, or compensation for personal service, of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever.

"(b) *Exclusions from Gross Income.* The following items shall not be included in gross income and shall be exempt from taxation under this title:

"(1) *Life Insurance.* Amounts received under a life insurance contract paid by reason of the death of the insured, whether in a single sum or in installments. * * * "

The petitioners contend that the amounts paid as above were received by them under a life insurance contract paid by reason of the death of Stevenson and should not be included in the gross income, while the Commissioner's claim is that they represented a distribution among stockholders of the gains or profits of the company and hence were dividends to be included in the gross income under section 22 (a). This raises the only question for review.

The petitioners say that in applying for, paying the premiums on, and receiving the proceeds of the policies the company acted simply as trustee or agent for the common stockholders, they being the real beneficiaries of the policies.

The evidence, oral and documentary, plainly shows that at the time the policies were taken out, it was intended by the officers of the company and all the common stockholders that the receipts therefrom should finally go to the benefit of certain stockholders—those existing at the time of Stevenson's death. This intention could have been fulfilled in two ways: (1) By taking out the policies in the name of the company as trustee for such stockholders, in which case there would be no question but the amounts received by the petitioners were received under the life insurance contracts; or (2) by a contract or undertaking on the part of the company that these proceeds should be paid to them, not by reason of their interests in the life insurance contracts, but by reason of their interests in the company as stockholders and as a distribution of a part of its surplus, in which case the amounts so distributed would be taxable to the receivers thereof.

It seems to us that the records of the company clearly show that it was the intent of all parties that these proceeds should go to swell the assets of the company. It paid the premiums, took the policies out in its own name, and it was understood both by the officers of the company and the common stockholders that when the proceeds thereof were received they would be so mingled with the other company assets that it would be necessary to declare a dividend in order to separate and give each individual stockholder a right to his proportionate part according to the number of shares in the company he held.

Unless one had an interest in the policy itself, the proceeds thereof received by him

as a gift, or by reason of a contract other than the policy, after they came into the hands of the beneficiary, would not be "amounts received under a life-insurance contract." To put the matter in its most simple form, it seems an analogous case would be one where A, having an insurable interest in the life of B, promises C that he will take out insurance on B's life payable to himself and that, when B dies and the proceeds of the policy are received, he will pay them over to C. It would seem clear in that case that C would have no interest in the policy and its proceeds until the money got into the hands of A, and no legal interest then unless there was a good consideration for A's promise, in which case the right of C to the funds would arise by virtue of his contract with A and not of the policy itself. We find nothing here indicating any interests held by the petitioner in the life insurance contracts. As said by the Board:

"The corporate resolutions of January 10, 1927, and February 14, 1928, both refer to the corporation as the insurer of the life of William B. Stevenson. The agreement between the corporation and the stockholders was not that the corporation would merely receive the proceeds of the insurance policies for the benefit of the stockholders, but that, upon receipt of the proceeds of the policies, it would pay them over to the stockholders as a cash dividend. Nowhere is there any reference to the corporation as a trustee nor are there present any circumstances which can be said to create a resulting trust in favor of the stockholders."

It is also claimed that, if the stockholders were not beneficiaries under the policies, "the agreements of January 10, 1927, and February 14, 1928, attached to the insurance fund the moment it was received by the corporation and by virtue of the agreements the corporation became a trustee of the insurance proceeds and the fund [never became assets of the company but] became subject to an equitable lien for the benefit of the stockholders of record as of January 12, 1929." They cite to this proposition Barnes v. Alexander, 232 U. S. 117, at page 121, 34 S. Ct. 276, 278, 58 L. Ed. 530, where the court says:

"At the latest, the moment the fund was received the contract attached to it as if made at that moment. It is an ancient principle even of the common law that words of covenant may be construed as a grant when they concern a present right. [Citing cases.] And it is one of the familiar rules of equity that a contract to convey a specific object

even before it is acquired will make the contractor a trustee as soon as he gets a title to the thing. * * * "

We find in the instant case no consideration for the agreements relied on and consider them to have been unenforceable. Had there been a consideration—had the promises of the company been made in consideration of services rendered or to be rendered, as in Barnes v. Alexander, supra, then on receipt thereof by the stockholders the funds would have gone into their gross incomes, not as dividends, but as "gains, profits, and income derived from salaries, wages, or compensation for personal service." Or had the lien attached and the funds been received by the stockholders on account of transfers of property to the company, the stockholders would have been taxable for their profits, if any, made by the transaction. In other words, their gross incomes would have been increased by the amount of gains or profits they received.

Moreover, the petitioners say, "even on the assumption that the corporation was the real beneficiary of these insurance policies, these payments to the petitioners were not dividends, since they were not a distribution out of the surplus or net profits of the corporation."

Section 115 (a) of the Revenue Act of 1928 (26 USCA § 2115 (a) defines "dividend" as follows:

"The term 'dividend' when used in this title * * * means any distribution made by a corporation to its shareholders, whether in money or in other property, out of its earnings or profits accumulated after February 28, 1913."

■ "Earnings or profits" as used in this section must mean the same as "gains or profits" in section 22 (a), and a gift to a corporation would be a gain. Nor would it be overstating the transaction here to say, that, the company having invested in the insurance policies by paying the premiums, the receipts therefrom over and above the premiums were profits. If these funds, however derived, belonged to the company when received, they would go to increase its surplus, and it cannot be seriously argued that the surplus funds in the hands of the company over and above its stock liability are not the earnings or profits contemplated by the section.

■ The petitioners also assert that the undertaking of the company to distribute its assets as contemplated by the votes of the directors and the actual declaration of distribu-

tion, being made to stockholders not existing at the time of the declaration but some months prior thereto, were illegal and from that argue that the distribution was not intended to be and was not a dividend. The legality or irregularity of the distribution cannot be raised here, especially by the petitioners who have retained the benefits of the distribution. If they received a part of the surplus of the corporation, as we hold they did, the Commissioner was justified in including the sums received in the gross incomes.

The orders of the Board of Tax Appeals are affirmed.