EDITH HUGGARD SHARP, CHARLES C. NORRIS, JR., AND FIDELITY-PHILADELPHIA TRUST COMPANY, EXECUTORS, ESTATE OF WALTER P. SHARP, DECEASED, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 48317. Promulgated October 25, 1935.

*Wm. Barclay Lex, Esq.*, for the petitioners.
*Ralph F. Staubly, Esq.*, for the respondent.

OPINION.

SEAWELL: In a report promulgated April 27, 1934 (30 B. T. A. 532), we held that the value of the corpus of five trusts created by the decedent on March 12, 1926, for the benefit of his five children, was not includable in the decedent's gross estate as transfers made in contemplation of or intended to take effect in possession or enjoyment at or after death. Reference was made in the opinion respecting the execution by the decedent at the same time of a sixth trust for the benefit of his wife, Edith Huggard Sharp, but there was no decision on the question of whether the value of the corpus of the trust constituted a part of the decedent's gross estate. We did hold, however, that of certain property purchased with the view of ultimately including it in such trust, items of the value of $19,-926.80 should not be included in the gross estate, but that the remaining items, determined by the respondent to be of a value of $155,380.37 for estate tax purposes, never had been included in any trust or transferred by way of gift and constituted property subject to estate tax.

Upon motion of petitioners, acquiesced in by respondent, permission was granted to amend the pleadings to include a sixth trust; and the cause was reopened for a rehearing to determine the taxability of the value of the corpus of six trusts as transfers made in contemplation of or intended to take effect in possession or enjoyment at or after death, in the light of the record theretofore made and additional stipulated facts.

The additional evidence before us consists of the six trusts executed by the decedent on March 12, 1926, one for each of his then five living children and one for his wife, and schedule E of the estate tax return.

Each of the five trusts created for the benefit of the decedent's children provides for the payment of the net income of the trusteed property or so much thereof as the trustees in their sole judgment may deem proper "for the comfort, education and support" of the child "either by the payment of bills incurred for any of the said purposes", or by payment to the father or mother of the beneficiary or other persons considered by the trustees suitable to receive the money during the minority of the beneficiary, and when the beneficiary becomes of age for the payment of the net income to the beneficiary for life. Upon the death of the beneficiary the net income is payable to the surviving issue of the beneficiary in equal shares for 20 years, at which time the trust is to terminate and the corpus thereof is to be distributed in equal shares among the beneficiary's then surviving issue. In event the beneficiary dies without surviving issue, or such issue dies within 20 years thereafter, the

trust is to terminate and the corpus is to be divided into as many parts as there are then surviving children of the grantor and deceased children leaving issue at that time surviving. One of such parts is to be distributed to each of the trusts then in existence and one among the surviving children of any deceased child for whom no trust is then in existence. Provision is also made for the distribution of the corpus under the intestate law of Pennsylvania in case the trust terminates at a time when the grantor has no surviving issue.

The net income of the remaining trust is payable to the grantor's wife for life and upon her death to the grantor, if living. Upon the death of the survivor of the grantor and his wife, the net income is to go to the grantor's children in equal shares, and upon the death of any child to his or her issue for 20 years after the death of the survivor of the grantor, his wife, and their five children, when the trust is to terminate and the corpus is to be distributed among the issue of the grantor's children, and, if no such issue, then to such persons as are entitled thereto under the intestate laws of Pennsylvania. The trust also contains a provision authorizing but not requiring the trustees to pay the net income distributable to beneficiaries not of age, for the comfort, education, and support of such minors by payment of bills incurred for such purpose, or to a parent or guardian of such minors.

Capital stock of Stephen F. Whitman & Son, Inc., constituted the corpus of each of the six trusts. The grantor did not reserve the power to amend, modify, or revoke any of the trusts.

Our opinion in the previous report disposes of the question of whether the items of $19,926.80 and $155,380.37 constituted a part of the sixth trust. In accordance with the conclusions reached there, the item of $19,926.80 will be excluded from, and the item of $155,-380.37 will be included in, the gross estate.

The value of the corpus of each trust is not in controversy. The question before us now is whether the value of the stock in the six trusts constituted a part of the decedent's gross estate as transfers made in contemplation of or intended to take effect in possession or enjoyment at or after death.

No boundary line has ever been fixed as a guide for determining whether a particular transfer was made in contemplation of death. The answer depends upon the circumstances of each case. *United States* v. *Wells*, 283 U. S. 102, in which the Court said that " There is no escape from the necessity of carefully scrutinizing the circumstances of each case to detect the dominant motive of the donor in the light of his bodily and mental condition, and thus to give effect to the manifest purpose of the statute." The Court also recognized

that "sound health and purposes associated with life may motivate the transfer."

We need not refer at length to the detailed findings of fact we made in our previous report respecting the circumstances surrounding the transfers. Briefly, they show that the decedent was 52 years of age at the time of his death and up to the time of his fatal illness, lasting only a few days, he had never had a serious illness. He was leading a busy life and was making plans for himself far into the future. His death occurred with little warning and only a few hours after he had performed a duty connected with his business. From these and other facts we found that the decedent's desire was to place funds beyond his control to protect his family against financial worries, and that such desire was the primary object of the creation of the trusts. A further motive was to decrease his income tax liability. See *Farmers Loan & Trust Co.* v. *Bowers*, 68 Fed. (2d) 916; certiorari denied, 293 U. S. 565. The trusts provided the means for the accomplishment of both objects, which objects, in our opinion, were the compelling and dominating motives for the transfers. Where such motives are the impelling causes for transfers, the property is not includable in gross estate as a transfer made in contemplation of death. See *Marie E. Harnischfeger et al., Executors*, 31 B. T. A. 224, and numerous cases cited therein on the point. The transaction had a closer association with the thought of living than knowledge of the certainty of death.

The fact that the decedent signed his will the day he executed the trust agreement has a bearing on the motive for the transfers, but it is not controlling. *Real Estate Land Title & Trust Co.* v. *McCaughn*, 79 Fed. (2d) 602.

Without a reservation of power to amend, modify, or revoke the trusts, no interest passed from the decedent at death subject to tax as a transfer intended to take effect in possession or enjoyment at or after death. *Reinecke* v. *Northern Trust Co.*, 278 U. S. 339; *May* v. *Heiner*, 281 U. S. 238. We adhere to the conclusion reached in 30 B. T. A. 532, with respect to the five trusts and make the same ruling here concerning the value of the corpus of the sixth trust.

In reference to the two contested insurance policies, while we found as a fact that there was no right reserved to change the beneficiary of either policy, we held that the face amount, less outstanding loans, should be included in the gross estate under section 302 (g) of the Revenue Act of 1926. This holding was predicated upon the loan and cash surrender provisions of the policies. Upon further consideration of this question, we find that a slight, but material, variance of the fact, omitted by inadvertence from the former report, confirms our conclusion upon other grounds as to policy No.

87437. This policy was made payable to the insured or *his assigns* on June 28, 1935, or, in case of his death prior thereto, to his wife, if living, otherwise to the executors, administrators, or assigns of the insured. Under such a right the insured could have changed the beneficiary without the consent of any other person. *N. Y. Mutual Life Insurance Co.* v. *Armstrong*, 117 U. S. 591; vol. 11, Cooley, Briefs on the Law of Insurance, 1092. Accordingly, we adhere to the ruling made as to policy No. 87437. But the inclusion of policy No. 81384 in gross estate, as before stated, was based upon the theory that the insured could at any time have surrendered the policy for its cash surrender value, or pledged it for a loan from the insurer based upon its cash surrender value, and that, since such powers could have been exercised until the death of the insured, the ending of the possibility was sufficient to justify the tax. The right or lack of power of the insured to substitute another for his wife as the beneficiary was not discussed in the opinion.

We find that the policies of insurance contained the following provisions:

This policy is issued subject to the provisions of the General Laws of Massachusetts applicable thereto, and is a contract made and to be performed in accordance with the provisions of the Law of the said Commonwealth.

Under decisions of the courts of Massachusetts the decedent's wife, as the beneficiary, had a vested interest in the policy which could not be divested without her consent. *Boyden* v. *Massachusetts Mutual Life Insurance Co.*, 153 Mass. 544; 27 N. E. 669; *Pingrey* v. *National Life Insurance Co.*, 144 Mass. 374; 11 N. E. 562; *Bailey* v. *Wood*, 202 Mass. 562; 89 N. E. 149; *Wilde* v. *Wilde*, 209 Mass. 205; 95 N. E. 295; *Goldman* v. *Moses*, 191 N. E. 873. The insured could not, without the written consent of the beneficiary, (1) surrender the policy for its cash value; (2) convert it into paid-up insurance; or (3) continue the policy in force as extended term insurance. Sec. 144, ch. 175, General Laws of Massachusetts. He could not obtain a loan on the policy except " upon its proper assignment to the company." Sec. 142, *ib.* Under provisions of the policy, the insured could not obtain a loan from the insured without " a legal assignment and delivery of the policy as collateral security." The beneficiary having a vested interest in the policy, her consent was necessary to obtain loans from the insured on the security of the policy. This being the case, the decedent had no power independent of the beneficiary to dispose of or alter the policy during his life for his own benefit, and upon his death nothing of value passed to his estate. It follows that no part of the proceeds of policy No. 81384 is includable in the gross estate. *Pennsylvania Co. for Insurance, etc.* v. *Commissioner*, 79 Fed. (2d) 295, reversing 29 B. T. A. 1306.

The fact that the insured did obtain a loan on the policy during his life is unimportant. We are only concerned with the face amount of the policy, less the outstanding loan. The respondent made no finding that the beneficiary gave the decedent power broad enough to permit him to surrender the policy, pledge it for a loan, or change the beneficiary, and from the fact that a loan was obtained it can not be assumed that the insured had such control.

The conclusion reached by us is not contrary to *Chase National Bank* v. *United States*, 278 U. S. 327. There the insured reserved the right to change the beneficiary.

Our report of April 27, 1934, 30 B. T. A. 532, is modified as set forth above.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

VAN FOSSAN dissents.