In the Matter of the Estate of MAURICE LION, Deceased.

Surrogate's Court, Erie County, October 7, 1952.

*Richard H. Wile* for Howard T. Saperston and another, as trustees under the will of Maurice Lion, deceased, petitioners.

*Philip H. Magner,* special guardian.

BUSCAGLIA, S. This proceeding was commenced by the trustees to determine whether certain assets received by the trust constitute income to be paid to the life beneficiary or principal to be retained for the remaindermen.

Under the will of the above-named decedent certain trusts were created and the principal asset of these trusts is a business known as the Lion Company. One of the assets of this company were insurance policies on the life of an employee, Victor A. Lownes, Jr. At the time of the death of Maurice Lion, the decedent, the cash surrender value of the policies amounted to $1,221.35. About five years after the death of Maurice Lion, Victor A. Lownes, Jr., died and the company received the proceeds of the policies on his life in the amount of $10,000. The issue is, are the proceeds income or principal.

It is the position of the income beneficiaries that the difference between the amount paid upon death, $10,000, and the cash surrender value as of the date of death of the insured, $1,974.90, is

additional income to the business and distributable to the trustees. The special guardian, of course, claims that the proceeds of the insurance policy are the replacement of a capital asset; namely, the insured, and as such the proceeds are to remain as principal.

The case of *Matter of Wertheimer* (177 Misc. 590) decided by Surrogate FOLEY in 1941, is quite close to the present case and, incidentally, seems to be the only case of any similarity. In that case the testator owned slightly less than one half of the outstanding shares of a corporation. Several years prior to his death he transferred to the corporation insurance policies upon his life in the face amount of $94,000. He received, in return, the actual cost to him of the policies. From that time on the corporation paid the premiums and at the time of the testator's death had expended almost $75,000. On his death the corporation collected the proceeds of the policies, which totaled over $95,000, thus receiving over $20,000 in excess of the amount expended by it.

More than a year after the death of the testator the corporation was dissolved and its assets were distributed to the stockholders. The accountants, treating the sum of $20,000 as profits, allocated the estate's share of such profits as income to the life beneficiaries of a residuary trust created by his will. The special guardian in that case asserted that the entire proceeds of the policies belonged to principal, on the theory that the policies were an asset of the corporation which had a value at the instant of the testator's death of the full amount collected by the company. Surrogate FOLEY upheld the position of the accountants, that the amount realized in excess of the amount paid was a profit earned by the corporation upon the insurance policies and must be deemed to be income.

If there were no material difference between the *Wertheimer* case and the instant case, the court would be inclined to follow the decision of Surrogate FOLEY. There are, however, what the court considers to be significant differences. In the *Wertheimer* case the insurance policies were originally taken out by the testator who had, through the years, paid a large amount of money into the insurance company. Testator, as mentioned above, held very nearly a majority of the stock of said corporation and the transaction was, in substance, a business deal between the testator and the corporation. The testator, who had enjoyed the protection of the insurance for a long number of years, transferred the policies to the corporation and received in return the entire amount paid in by him. This was something

which, presumably, he could not otherwise have done during his own lifetime. The corporation, on the other hand, as stated by Surrogate FOLEY, made " an investment upon which, depending upon the date of the death of the testator, a profit might or might not be realized at some future time." (P. 591.) The corporation involved was a holding company and Surrogate FOLEY considered it significant that " Within the unusually wide powers granted in it, there can be no question that the corporation had the right to purchase the insurance policies from the testator ".

It should be noted that nowhere in the opinion of the court in the *Wertheimer* case is there any indication that the corporation purchased the policies so as to afford itself some reimbursement for the loss of services of the testator. Indeed, it does not even appear that the testator was an officer, director, or even an employee of the corporation or that he had any hand in the management of its affairs.

In the present case the insurance policy in question was what is known as a " key-man " insurance policy. The policies were originally taken out by the company and the premiums were always paid by the company. The purchase of such an insurance is to afford a business some sort of protection against the loss which may be sustained by the death of a valuable employee. The court feels that this distinction serves to emphasize the fact that in the *Wertheimer* case the proceeds of the insurance policy, in the amount that they exceeded the cost of such policy, were unquestionably income. The distinction, however, does not of itself establish the fact that in this case the proceeds should be considered principal.

Under these particular circumstances, the search for a reasonable factor which will clearly determine whether the amount here involved is to be considered income or principal, may be a futile one. As stated above, the policy of insurance was taken out for the purpose of affording some monetary compensation to the company for the loss of services of a presumably experienced and capable employee. Whether we should say that the specific purpose was to protect against loss of income or against decrease in the value of the corporation is speculative. Certainly, in no strict legal sense could the employee be said to constitute a capital asset of the company so as to clearly make the proceeds of the insurance policy a replacement of a capital asset. On the other hand, the proceeds are certainly not a profit realized by the company on an investment, either in the usual sense or in any sense. It is fair to state that the policy was not taken out because of any investment features. Indeed, such would be prohibited by sub-

division 2 of section 146 of the Insurance Law, which provides that, an " ' insurable interest ' * * * shall mean * * * a lawful and substantial economic interest in having the life, health or bodily safety of the person insured continue, as distinguished from an interest which would arise only by, or to be enhanced in value by, the death, disablement or injury, as the case may be, of the person insured."

We must presume that this insurance contract was a lawful one. This being so, we must interpret it to be a means of the company's compensating itself for the loss of an employee in which the company had a " substantial economic interest ". It should be mentioned that a number of Federal cases, the Internal Revenue Code and the regulations of the Bureau of Internal Revenue treat the proceeds of such life insurance policies as additions of capital. (Internal Revenue Code, §§ 22, 24; Code of Fed. Reg., tit. 26, §§ 29, 22.)

The case of *Golden* v. *Commissioner of Internal Revenue* (113 F. 2d 590) did hold that where the proceeds of such an insurance policy were transferred to the stockholders, this payment to the stockholders was to be considered a dividend and was therefore income for tax purposes. However, the *Golden* case implies most strongly that proceeds of such insurance are not income to the corporation, stating (p. 592) : " A corporation cannot, and does not, make a gift of its assets to shareholders. It may, however, transfer surplus assets to them in the form of dividends. *The case at bar unquestionably instances a transfer of surplus assets to stockholders.*" (Emphasis supplied.)

While the *Golden* case and the Internal Revenue Bureau regulations are in no sense precedent, nonetheless the court is inclined to agree with the reasoning behind them. In such a case as this the proceeds of a key-man life insurance policy, clearly an attempt at replacement by increase of capital of an irreplaceable employee, must be considered as principal.

A decree may enter accordingly.